CAROL SENDERAK et al., Plaintiffs-Appellants, v.
MARILYN MITCHELL et al., Defendants-Appellees.
First District (5th Division)   No. 1—95—1447

Opinion filed July 12, 1996.

Michael W. Rathsack, of Chicago (Robert J. Glenn, of counsel), for appellants.

Neil K. Quinn and Matthew J. Egan, both of Pretzel & Stouffer, Chartered, of Chicago, for appellees.

JUSTICE HOURIHANE delivered the opinion of the court:

Plaintiffs, Carol Senderak and Thomas Senderak, brought a medical malpractice action against defendants, Marilyn Mitchell, M.D., and Carl Cucco, M.D. A jury ultimately returned a verdict for Carol in the amount of $683,927.11 and for Thomas in the amount of $465,125. Defendants filed a post-trial motion seeking either judgment notwithstanding the verdict or a new trial on the issue of damages. The circuit court granted defendants a new trial. We allowed plaintiffs' appeal of the order pursuant to Supreme Court Rule 306(a)(1). 134 Ill. 2d R. 306(a)(1). We affirm the circuit court's order granting a new trial, but modify it to reflect that the new trial will be limited to damages only.

## Background

In 1988, Carol Senderak (Carol) was referred to Dr. Mitchell by her general practitioner, Dr. Linda Henriksen, after a Pap smear indicated some gynecological abnormalities. Dr. Mitchell performed further examinations which revealed the presence of lesions in Carol's reproductive tract. After reviewing the exam results, Dr. Mitchell decided to remove the lesions by way of a surgical procedure known as a "conization." Dr. Mitchell and codefendant Dr. Cucco performed the procedure. However, complications arose when Carol began to hemorrhage. Eventually, defendants concluded that the only way to contain the persistent hemorrhaging was to perform an emergency hysterectomy. Carol underwent that surgery without further problems.

The issue at trial was whether defendants improperly and inadequately performed both the conization and the hysterectomy. The jury ruled in favor of the plaintiffs.

Defendants filed a post-trial motion seeking judgment notwithstanding the verdict. Defendants contended that the trial judge should not have permitted Dr. Stephen Myers to testify as plaintiffs' expert. Alternatively, defendants asserted that the jury instructions regarding the loss of society of unborn and unconceived children wrongly stated the applicable law.

After a hearing on the above motion, defendants filed an amended post-trial motion clarifying that the alternative request for relief was for a new trial on the issue of damages. To that end, the amended motion challenged, as excessive, the damages awarded for future pain and suffering because of the impropriety of the loss of society instruction.

The circuit court denied defendant's motion for judgment notwithstanding the verdict, but granted a new trial because the court found, without further explanation, that the "jury verdict [was] against the manifest weight of the evidence."

## Analysis

■ We begin our analysis by noting that the trial judge did generally state on the record that the reason for his allowance of the new trial was that the "jury verdict [was] against the manifest weight of the evidence." The trial judge did not elaborate or make any other specific findings. Plaintiffs have taken the position that the judge based his ruling solely on defendants' argument regarding the jury instruction. Had the judge ruled on the expert witness issue, they argue, he would have entered a judgment notwithstanding the verdict because plaintiffs would not have been able to prove the requisite

breach of the standard of care necessary to prevail in a medical malpractice negligence action.[1] Thus, plaintiffs' arguments focus upon the propriety of the given jury instructions. Plaintiffs insist that this court cannot review the expert witness issue because the circuit court denied defendants' motion for judgment notwithstanding the verdict. However, Supreme Court Rule 306(a) allows this court to review *all* rulings made by the circuit court on the post-trial motion without the necessity of a cross-petition. See 134 Ill. 2d R. 306(a). Therefore, we may assess the circuit court's determination regarding the denial of defendants' motion for judgment notwithstanding the verdict.

■ In establishing an expert physician's competency to testify, the proponent must show that the physician is a licensed member of the school of medicine about which he is to testify. In addition, the party offering the witness must show that the witness "is familiar with the methods, procedures, and treatments ordinarily observed by other physicians, in either the defendant physician's community or a similar community." *Jones v. O'Young*, 154 Ill. 2d 39, 43, 607 N.E.2d 224 (1992). If the proponent fails to satisfy either of these foundational requirements, the circuit court must disallow the expert's testimony. *Purtill v. Hess*, 111 Ill. 2d 229, 244, 489 N.E.2d 867 (1986). On the other hand, if the foundational requirements have been met, the circuit court has the discretion to determine whether a physician is qualified and competent to state his or her opinion as an expert regarding the standard of care. *Purtill*, 111 Ill. 2d at 243.

■ The record reveals that plaintiffs' expert, Dr. Myers, was board certified in obstetrics and gynecology, as were both defendants. Clearly then, Dr. Myers was licensed in the same "school of medicine" as Drs. Mitchell and Cucco. Thus, plaintiffs satisfied the first foundational requirement noted above.

As to the second element, Dr. Myers stated that he was familiar with the procedures at issue even though he acknowledged that he had not performed some of them himself since 1977. Therefore, defendants' reliance on *Northern Trust Co. v. Upjohn Co.*, 213 Ill. App. 3d 390, 572 N.E.2d 1030 (1991), is misplaced. In *Northern Trust*, this court held that the plaintiff's expert did not meet the foundational requirements because (i) he had never been involved in pregnancy interruption procedures at issue in the case and (ii) he

---

[1]Judgment notwithstanding the verdict would have been the only appropriate relief in this context given the fact that plaintiffs proceeded to trial with only one expert physician witness. Plaintiffs never disclosed any other medical experts during pretrial discovery.

had never prescribed any of the drugs at issue in the case. Here, in contrast, Dr. Myers testified that he was familiar with the procedures at issue. The fact that he had not performed the procedures for several years goes to the weight to be given to his testimony, not to its admissibility. Accordingly, the circuit court did not abuse its discretion in allowing Dr. Myers' testimony. Thus, the circuit court properly denied judgment notwithstanding the verdict on this issue.

■ We now address the trial court's allowance of a new trial. An erroneous instruction, of course, requires a new trial if its effect is prejudicial. *Korpalski v. Lyman*, 114 Ill. App. 3d 563, 568, 449 N.E.2d 211 (1983).

Over objection, the circuit court gave the jury plaintiffs' instructions Nos. 17c and 18, modifications of the pattern instruction definition of "pain and suffering," stating that pain and suffering included

> "the loss of society of natural children who might or could have been born, experienced and reasonably certain to be experienced in the future as a result of the injuries."

The circuit court further defined "society" as:

> "[t]he mutual benefits that a family member receives from another's existence, including love, affection, care, attention, companionship, comfort, guidance, and protection."

Plaintiffs' instruction No. 20a further emphasized damages for loss of society by stating that the jury should consider plaintiffs' respective life expectancies in computing their "damages arising in the future because of injuries or loss of society."

Plaintiffs contend that these instructions are proper because tortfeasors are liable for all damages which ordinarily flow from their wrongful acts. Defendants counter that a damage award based upon the loss of society of future unborn children is without any basis in Illinois law. We agree.

In *Bullard v. Barnes*, 102 Ill. 2d 505, 468 N.E.2d 1228 (1984), our supreme court first recognized that parents of a minor child may recover for loss of the child's society. The court there stated its belief that the chief value of children to their parents is the intangible benefits children provide in the form of comfort, counsel, and society. *Bullard*, 102 Ill. 2d at 516-17, citing *Cockrum v. Baumgartner*, 95 Ill. 2d 193, 198-202, 447 N.E.2d 385 (1983). Several years later, the court expanded its ruling in *Bullard* so as to allow parents to maintain a cause of action to recover damages for the loss of society of a "viable" fetus. *Seef v. Sutkus*, 145 Ill. 2d 336, 338, 583 N.E.2d 510 (1991). The court in *Seef* relied upon an earlier case, *Chrisafogeorgis v. Brandenberg*, 55 Ill. 2d 368, 304 N.E.2d 88 (1973), in which it acknowledged the right of parents to maintain a cause of action for the wrongful death of a stillborn child. *Seef*, 145 Ill. 2d at 338-39.

■ We decline plaintiffs' invitation to apply the rationales of the above-cited cases here. In each of the cited cases, the court's holding rested upon the premise that the parents were deprived of the society of a particular individual, either a minor child as in *Bullard* or a viable fetus as in *Seef*. In contrast, plaintiffs here have not been similarly damaged because the loss for which they wish to be compensated concerns children who have not yet come into existence and are not otherwise identifiable. As such, the damages are much more remote and speculative than those allowed in either *Seef* or *Bullard*. Plaintiffs have not presented this court with any authority from Illinois or from any of our sister states in which these types of damages have been recognized. In the absence of such authority, we decline to expand the holdings of our supreme court in the manner suggested by plaintiffs. The logical progression of plaintiffs' position would be that a surviving husband in a wrongful death action for his wife would be entitled to damages for the loss of society of children that might have been born had his deceased wife survived. Such damages are clearly speculative beyond any reasonable horizon and not directly compensable.

Although the instructions were improper, a new trial as to both liability and damages is unnecessary in this case. Defendants themselves framed this issue in the circuit court as involving only the damages aspect of the trial. Defendants never moved for a new trial on the basis that the jury's verdict as to liability was against the manifest weight of the evidence, and their motion for judgment notwithstanding the verdict was denied.

Nonetheless, defendants now argue on appeal that "the trial court made it clear that it was considering the possibility of granting a new trial" as to all issues. Defendants' position is not supported by the record. Although the trial court stated that it would "consider all matters including the request for the possibility of granting a new trial," the only such request before the court was defendants' request for a new trial as to damages. That is the issue which was briefed and argued. Thus, the court's grant of a new trial is properly limited to the issue of damages.

■ We note further that where, as here, the trial court did not state with specificity its reasons or findings which support the grant of a new trial, the reviewing court must turn to the post-trial motions for guidance because "it is presumed that the errors there alleged prompted the order." *Rodriguez v. Chicago Transit Authority*, 58 Ill. App. 2d 150, 155 (1965). Here, the only error alleged by defendants in support of their motion for a new trial was that the court improperly instructed the jury as to damages for loss of society

of unborn and unconceived children. Under these circumstances, it must be presumed that the trial court granted defendants' motion for a new trial on that basis.

A new trial on the question of damages only is appropriate if (i) the jury's verdict on the question of liability is amply supported by the evidence; (ii) the questions of damages and liability are so distinct that a trial limited to the question of damages is not unfair; and (iii) the record suggests neither that the jury reached a compromise verdict nor that the error which resulted in the inadequate damages affected the jury's verdict on the question of liability. *Balestri v. Terminal Freight Cooperative Ass'n*, 76 Ill. 2d 451, 456, 394 N.E.2d 391 (1979); *Robbins v. Professional Construction Co.*, 72 Ill. 2d 215, 224, 380 N.E.2d 786 (1978). After reviewing the record, we are satisfied that these criteria have been met and that no prejudice will result to either party.

Accordingly, we affirm the order of the circuit court granting a new trial, but modify the order to reflect that the new trial is limited to the issue of damages.

Affirmed as modified.

McNULTY, P.J., and GORDON, J., concur.